IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BLAKE MIRACLE,<br><br>               Plaintiff,<br><br>vs.<br><br>SIGNAL PEAK ENERGY, LLC,<br><br>               Defendant. | CV 22-52-BLG-SPW<br><br>ORDER DENYING<br>SUMMARY JUDGMENT |

Plaintiff Blake Miracle filed this action against Signal Peak Energy, LLC ("Signal"), alleging wrongful discharge under Montana's Wrongful Discharge from Employment Act ("WDEA"). (Doc. 4). Signal now moves for summary judgment on all of Miracle's claims. (Doc. 10). The Court finds that summary judgment is premature because the record does not contain enough information to resolve the genuine issues of material fact. More discovery may be able to resolve these disputes. Accordingly, the Court denies signal's motion.

## I.      Statement of Facts

Miracle was employed by Signal as the Waste Disposal Area Supervisor from July 11, 2021, to December 14, 2021. (Doc. 7 at 2). Miracle's employment ended after Miracle allegedly received benefits from a company contracting with

1

Signal in violation of Signal's ethics policy.[1]  (Doc. 4 at 3).  The parties disagree

on whether Signal discharged Miracle, or Miracle resigned.  (*See* Doc. 12 at 4-6).

Further, the record does not contain any evidence of the events leading up to the

end of Miracle's employment, including documentation of his termination meeting

and his employee file.

On December 17, 2021, Miracle's attorney wrote to Signal requesting

written notice of Signal's grounds for terminating Miracle, copies of his personnel

records, and "any grievance and/or appeal process that Sign Peak expects Mr.

Miracle to comply with, in order to contest the termination of his employment

internally."  (*Id*. at 4-5).  Counsel for Signal responded via mail on December 20,

2021, stating that Miracle "was not discharged by Signal … [h]e resigned his

position."  (*Id*. at 6-8).  The letter also explained that Signal would provide Miracle

with his employment file if he was willing to pay for the time and expense of

copying it.  (*Id*).  Signal included a copy of Signal's Internal Complaint Process

("ICP").  (*Id*. at 8).  The ICP provides, in relevant part:

> If any individual employee wishes to appeal discharge, layoff, or a change in
> working conditions, he or she **must** present a written statement to the
> Human Resources Director within 10 days after he or she is informed of the
> discharge or change in the working condition. The written statement must
> contain the facts the employee believes should be considered and shall state
> the resolution the employee believes is appropriate. The Human Resources

[1] It is not clear from the record exactly what kind of benefits Miracle was alleged to have
received.  In Miracle's grievance letter, Miracle's attorney mentions personal loan payments
(Doc. 12 at 13), but such payments are not referenced anywhere else in the record.

Director shall advise the employee or former employee of the final decision regarding the employee's complaint or grievance within 90 days after the employee initiates the process.

(*Id.*).[2] Under the WDEA, the 10-day deadline starts to run the day Signal sends or provides a copy of the ICP to the employee of the employee's attorney. Mont. Code Ann. § 39-2-911.

Counsel for Miracle responded January 4, 2022, stating that Miracle denies that he resigned from Signal. (*Id.* at 13). According to Miracle, his employment was terminated, but Signal agreed to characterize it internally as a resignation for reference calls from future employers. (*Id.*). Miracle also states he was neither "given an opportunity to explain the context" of the alleged benefits provided to him by the contracting company, nor allowed to provide evidence to rebut Signal's grounds for termination. (*Id.*). For these reasons, Miracle sought to appeal his "discharge" and be reinstated by Signal with back wages. (*Id*)

## II.    Legal Standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

---

[2] Though Miracle contests the authenticity of the grievance procedure provided by Signal in its December 20, 2021, letter because it was in a native Word document file (Doc. 17 at 2-3), the document provided to Miracle is an exact copy of the ICP in Signal's original and revised handbooks (*Compare* Doc. 12 at 8 and Doc. 20-1 at 50, 129), of which Miracle is on record acknowledging receipt (Doc. 20-1 at 6-7).

477 U.S. 317, 322 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Id.*

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. To meet this burden, the movant must identify those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A)). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *See id.* at 587.

## III.  Analysis

Signal claims the following in support of summary judgment: (1) Miracle's WDEA claim is prohibited because his grievance was untimely; and (2) even if Miracle's grievance was timely, his WDEA claim is still barred because his

4

grievance did not contain a statement of facts which Miracle believes should be considered by Signal, as required by the ICP. (Doc. 13 at 17-18).

Miracle argues that Signal's motion is premature because not enough discovery has been completed to resolve certain disputed, material facts. (Doc. 17 at 2-3). Miracle contends that genuine issues exist as to whether Miracle resigned or was fired, the scope and application of the ICP to Miracle, and whether the ICP's 10-day grievance deadline includes weekends and holidays. (*Id.*).

In its reply, Signal asserts that whether Miracle resigned or was discharged is immaterial because, either way, he would not have a claim: If he resigned, he has no claim under the WDEA, and if he was discharged, his untimely grievance bars his WDEA claim. Further, Signal argues that 10 days unambiguously includes weekends and holidays, so Miracle's grievance was untimely. Finally, Signal notes that Miracle's Statement of Disputed Facts (Doc. 16) does not comply with the Local Rules.

A.   **Resignation or Termination**

The WDEA provides the exclusive remedy for wrongful discharge from employment. Mont. Code Ann. § 39-2-902. A discharge is wrongful if: (1) in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy; (2) not for good cause after the employee's probationary period; or (3) the result of the employer violating its own written personnel policy.

*Id.* § 39-2-904(1). Discharge can include when an employee voluntarily resigns due to objectively intolerable working conditions created by their employer, known as constructive discharge. *Id.* § 39-2-903(1), (2). Importantly, an employee who voluntarily resigns for other reasons does not have a claim under the WDEA.

"[A]n employee must first exhaust an employer's internal grievance procedure before he or she can bring a wrongful discharge action under the WDEA." *Haynes v. Shodair Children's Hospital*, 137 P.3d 518, 521 (Mont. 2006). Failure to exhaust the internal procedures "is a complete bar to pursuing a claim under the WDEA." *Offerdahl v. State, Dept. of Nat. Res. and Conservation*, 43 P.3d 275, 278 (Mont. 2002) (citing Mont. Code Ann. § 39-2-911(2)). Both the employee's failure to meet the filing deadline for a grievance and the employee's failure to conform the grievance to the employer's grievance procedures are affirmative defenses to WDEA claims. *Id.*; *Haynes*, 137 P.3d at 521.

Miracle asserts that Signal discharged him without good cause and in violation of Signal's personnel policies. (Doc. 4 at 3). Miracle argues that this fact is material and disputed, so summary judgment is improper. (Doc. 17 at 5-7).

Though Signal maintains that Miracle resigned (Doc. 12 at 6), Signal primarily asserts that whether Miracle resigned or was fired is immaterial: If he resigned, then he has neither an internal grievance nor a WDEA claim; and if he was terminated, his failure to comply with Signal's internal grievance process

would bar his WDEA claim. (Doc. 21 at 7). Signal bases its rationale on the

Montana Supreme Court's holding in *Haynes*, which characterized an analogous

situation to the one described by Signal as "circular and unavailing." 137 P.3d at

521.

   In *Haynes*, Haynes worked as the hospital's director of information systems

and supervised one employee. *Id.* at 519. Haynes repeatedly complained to

management that the employee was frequently absent, which was affecting the

ability of his department to meet deadlines. *Id.* Haynes eventually resigned,

claiming he had been constructively discharged. *Id.* The hospital provided Haynes

with a copy of its grievance policy the day after he resigned, which indicated that

he needed to file and sign the required grievance form within five business days of

his resignation. *Id.* Haynes responded eight business days after his resignation

with a grievance letter that was neither on the required form nor signed by Haynes.

*Id.* The hospital responded that Haynes' filing was late and not in compliance with

its policy. *Id.*

   Haynes sued under the WDEA. *Id.* On the hospital's motion for summary

judgment, Haynes argued that though he was notified that the hospital's grievance

policy applied to him and though his grievance was filed late, the grievance policy

did not in fact apply because he "voluntarily resigned." *Id.* at 521. The court

rejected this argument as "circular and unavailing" because if he "left his

7

employment 'voluntarily' and not in response to the conduct of his employer, then he has no wrongful discharge claim at all. If, on the other hand, he was constructively discharge, then the provisions of the grievance procedure clearly apply." *Id.* Either way, his WDEA claim was barred for failure to state a claim or failure to exhaust his employer's administrative remedies. *Id.*

However, *Haynes* is distinct from this case for two key reasons. First, Miracle is not arguing, as Haynes did, that if he resigned, he could bypass the grievance process and still bring a WDEA claim. In fact, Miracle explicitly recognizes that "if a jury were to decide that he ... voluntarily resign[ed], his WDEA would be entirely barred." (Doc. 17 at 6). Instead, Miracle points out the fact that Signal simultaneously claims that Miracle resigned and cannot file a grievance, and had to conform with the grievance procedure. (*Id.*).

Miracle's argument also would be "circular and unavailing" except for the fact that the calculation of Signal's grievance deadline, unlike that in *Haynes*, is ambiguous. If, as in *Haynes*, the record provided an undisputed understanding of the deadline calculation and of Miracle's failure to meet that deadline, then the characterization of the end of Miracle's employment would be immaterial and the Court could grant summary judgment. Since that is not the case here, determining whether Miracle resigned or was fired is a threshold material fact.

Given that the characterization of the end of Miracle's employment is a material fact, Signal must demonstrate that no genuine dispute exists as to that characterization. As evidence to support an absence of a genuine dispute on this issue, Signal only provides the Court with the correspondence between its attorney and Miracle's attorney about his grievance. (Doc. 12 at 4-14). However, the correspondence only contains a bare assertion by Signal's attorney that Miracle resigned. (Doc. 12 at 6). In fact, none of Signal's filings contain or reference any documentation confirming that Miracle resigned. Miracle's attorney references some other internal communications and COBRA and UID submissions to support the termination theory (Doc. 12 at 13), but none of these documents are in the record nor is the burden on Miracle to substantiate that fact until Signal meets its burden.

Further, the record suggests Miracle resigned *and* he was fired. On the one hand, Signal's attorney stated, "Mr. Miracle was not discharged by Signal Peak Energy. He resigned his position." (Doc. 12 at 10). And if he resigned, "the grievance process would not apply to him." (Doc. 21 at 6-7). On the other hand, Signal responded to Miracle's attorney's request for "any grievance and/or appeal process that Signal Peak expects Mr. Miracle to comply with, in order to contest his termination of employment internally," with the ICP. (Doc. 12 at 5, 8). This contradiction deepens the factual dispute.

9

Accordingly, the Court denies summary judgment on this issue.

**B.     Grievance's Conformity with the ICP**

Signal asserts Miracle failed to file a timely grievance and to conform his grievance to the requirements of the ICP. Miracle rejects both these assertions.

### 1. Timeliness

In the WDEA cases concerning timeliness of a grievance, the parties either disputed when the deadline began, or did not dispute the timeliness of the grievance. *E.g. Offerdahl*, 43 P.3d at 277 (deadline clock started at termination); *Haynes*, 137 P.3d at 288 (no dispute over deadline). The parties here did not cite, nor could the Court find, a case in which the parties disputed how to count the days until the deadline, likely because the employee policies at issue in the relevant WDEA cases unambiguously stated that the parties had a certain number of business days to file their grievances. *E.g. Offerdahl*, 43 P.3d at 277 ("15 working days after grievable event"); *Haynes*, 137 P.3d at 288 ("five business days").

Furthermore, the WDEA does not contain any provisions clarifying how to count days until the grievance deadline if the policy is ambiguous. Generally, any statute that does not contain a counting provision follows the method of computing time outlined in Montana Rule of Civil Procedure 6(a); however, the Court is reluctant to impose a statutory rule on a private company's policy unless further discovery fails to provide evidence of Signal's practice of interpreting 10 days. As

10

such, the Court will "interpret [Signal's] personnel policies to determine their

reasonable meaning." *Hathaway v. Zoot Enterprises, Inc.*, 2021 WL 7367316

(Mont. Dist. Ct. Feb. 8, 2021).

Without citing to any relevant caselaw or points in the record, Signal simply

states that 10 days means 10 days, and if it meant 10 business days, it would have

said so. (Doc. 21 at 8). Based on this interpretation, Miracle would have had to

submit his grievance by Friday, December 31, 2021. Miracle, on the other hand,

analogizes to non-WDEA statutory and administrative rules that exclude weekends

and federal and state holidays from the calculation. (Doc. 17 at 10). By this logic,

the grievance deadline would be Thursday, January 6, 2022.[3]

The Court does not find sufficient support in the record to reasonably

interpret the ICP's 10-day deadline as including weekends and holidays,

particularly when the deadline falls on a federal holiday. Signal's attorney's bare

assertions are not enough. The only scintilla of insight in the record is the federal

holiday and "in lieu of" holiday observation in Signal's employee handbooks.

(Doc. 21-1 at 59). Read in the light most favorable to Miracle, this policy could

imply that Signal's general practice of recognizing federal holidays is imputed onto

---

[3] Miracle suggests that Christmas Eve and New Year's Eve are "well-understood federal and state holidays." (Doc. 17 at 8). The Court does not agree. *See* Mont. Code Ann. § 1-1-216; 5 U.S.C. § 6103. However, both statutes provide for "in lieu of" holidays, meaning the respective government will recognize a holiday that falls on a Saturday or Sunday on the preceding Friday or successive Monday. The Court's calculation of the January 6, 2022, deadline follows this logic, not the one put forth by Miracle.

its grievance deadline calculation.  However, the Court need not even consider this policy—which neither party cited—since Signal failed to provide any evidence in support of its interpretation in the first place.

Because the crux of this case is the calculation of the deadline for Miracle's grievance, the Court cannot grant summary judgment when the method of calculation is still in dispute.

### 2.  Substance

Regardless of the timeliness of Miracle's grievance, Signal contends that Miracle omitted the statement of facts that Miracle believes should be considered by Signal, as required by the ICP.  (Doc. 13 at 15-16).  According to Signal, Miracle's statement that he had not been given the opportunity to explain or provide evidence of the context of the alleged ethics violations does not constitute a sufficient statement of facts.  (*Id.*).  In support of this argument, Signal merely reiterates that failure to conform with an employer's internal grievance process bars WDEA claims.  (Doc. 13 at 15; Doc. 21 at 14).  In response, Miracle argues that Miracle's grievance must been the threshold of Signal's policy because Signal did not provide Miracle with any more detail for the grounds of his termination, so he could not specifically refute what he did not know.  (Doc. 17 at 12).

Under *McDonald v. Townsquare Media*, which neither party cites, the threshold for a statement of facts which the employee believes should be

considered is relatively low.  2014 WL 51672 (D. Mont. Jan. 7, 2014).  In

*McDonald*, Townsquare's internal grievance process required the grievance to

"state[] facts which she believes should be considered by Townsquare Media."  *Id.*

at *4.  In her grievance, McDonald stated that she has "never been reprimanded,

written up or formally warned," and that she has continued to keep the radio station

where she worked "at its number one status."  *Id.* at *5.  Townsquare argued that

this was insufficient to constitute a statement of facts.  *Id.* at *4.  The court

disagreed, holding that "the grievance procedure does not require the employee to

provide specific facts which meet and rebut the specific reasons given for the

employee's discharge. The procedure simply requires that the employee provide

facts that the employee believes should be considered."  *Id.* at *5.

Miracle's grievance likewise meets the threshold for Signal's policy, which

is identical to that in *McDonald*.  Miracle's grievance effectively states that the

context of the personal loan payments would demonstrate that he did not violate

Signal's ethics policy and that he has evidence of that context which he was not

permitted to present to Signal when he was terminated. (Doc. 12 at 13).  Though

Miracle does not provide this specific evidence in his grievance, he was not

required to do so under the logic of *McDonald*. 2014 WL 51672, at *4.  As such,

Signal failed to meet its burden to show an absence of a genuine dispute of

material fact as to the grievance's conformity with Signal's policy.

13

**C.**     **Conformity with Local Rules**

Lastly, Signal argues in its reply that Miracle's Statement of Disputed Facts does not meet the requirements of Local Rule 56.1(b)(1)(B) because it does not pinpoint cite to specific documents in the record to oppose each fact.  (Doc. 21 at 3-4).  Signal is correct that Miracle's Statement of Disputed Facts does not conform with the local rules for the reason stated by Signal.  However, Signal should also note that its Brief in Support of Motion for Summary Judgment does not conform with Local Rule 47.2(c) because it does not include a certificate of compliance that states the number of words in the brief.

**IV.     Conclusion**

The Court finds that genuine disputes exist to each material fact in this case because of the dearth of evidence provided by Signal (and Miracle) to support its interpretation of the end of Miracle's employment and its own employee policies. IT IS HEREBY ORDERED that Defendant Signal Peak Energy, LLC's Motion for Summary Judgment (Doc. 10) is DENIED.  IT IS FURTHER ORDERED that the Court's stay on discovery (Doc. 22) is LIFTED.

DATED this 20th day of October, 2022.

SUSAN P. WATTERS
United States District Judge

14